FILED
2012 May-14 PM 04:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **CAROLYN MARTIN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 4:12-CV-1057-VEH |
| | ) |
| **COVENTRY HEALTH CARE** | ) |
| **WORKERS COMPENSATION,** | ) |
| **INC., CNA CLAIMPLUS, INC.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

**I.   INTRODUCTION**

Plaintiff Carolyn Martin ("Ms. Martin"), originally filed this breach of contract and tort of outrage action in the Circuit Court of Etowah County, Alabama, on March 5, 2012. (Doc. 1 ¶ 1; *id.* at Ex. A. at Compl. at 1). According to her complaint, Ms. Martin suffered from an occupational accident on March 28, 1985, and she is claiming injuries and damages stemming from a 2011 denial of payment for prescribed medical treatment (*i.e.*, surgery and attendant services) relating to this earlier vocational injury. (Doc. 1 at Ex. A. at Compl. ¶¶ 8, 14). Ms. Martin expressly disavows any attempt to assert a claim under the Alabama Workers' Compensation

Act.[1]  (*Id.* ¶ 5).

Defendants Coventry Health Care Workers Compensation, Inc. ("Coventry") and CNA ClaimPlus, Inc. ("CNA") removed the litigation to federal court on April 6, 2012, asserting diversity under 28 U.S.C. § 1332 as the basis for federal jurisdiction. (Doc. 1 ¶ 2).  On April 10, 2012, Ms. Martin filed a Motion To Remand and Combined Memorandum of Law (Doc. 5) (the "Remand Motion") and a Motion To Strike "Declaration of Marilyn Balsam" (Doc. 6) (the "Strike Motion").

Defendants filed their opposition to both of these motions on April 24, 2012. (Doc. 9).  On May 2, 2012, Ms. Martin followed with her reply.  (Doc. 11).  The Remand Motion and Strike Motion are now under submission and, for the reasons explained below, they are both **DENIED**.

## II.   STANDARDS

### A.   Subject Matter Jurisdiction Generally

"It is by now axiomatic that the inferior courts are courts of limited jurisdiction. They are 'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress."  *Univ. of S. Ala. v. Am.*

---

[1] As a result, 28 U.S.C. § 1445's nonremovable action subsection applicable to "[a] civil action in any State court arising under the workmen's compensation laws of such State . . . ." plays no part here.  28 U.S.C. § 1445(c).

*Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). "Accordingly, '[w]hen a federal court acts outside its statutory subject-matter jurisdiction, it violates the fundamental constitutional precept of limited federal power.'" *Univ. of S. Ala.*, 168 F.3d at 409 (quoting *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212, 92 S. Ct. 418, 425, 30 L. Ed. 2d 383 (1971)). "Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Univ. of S. Ala.*, 168 F.3d at 410.

"A necessary corollary to the concept that a federal court is powerless to act without jurisdiction is the equally unremarkable principle that a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings." *Id.* "Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Id.* (citing *Fitzgerald v. Seaboard Sys. R.R.*, 760 F.2d 1249, 1251 (11th Cir. 1985) (per curiam)).

Moreover, "[t]he jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case, and cannot be waived or otherwise conferred upon the court by the parties. Otherwise, a party could 'work a wrongful extension of federal jurisdiction and give district courts power the Congress denied them.'" *Jackson v. Seaboard Coast Line R.R.*, 678 F.2d 992, 1000-01 (11th Cir. 1982) (quoting *American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 18

(1951)) (footnote omitted) (citation omitted). Furthermore, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *Univ. of S. Ala.*, 168 F.3d at 411 (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941)).

Lastly, Congress has decreed and the Supreme Court has confirmed that - with the express exception of civil rights cases that have been removed - orders of remand by district courts based upon certain grounds, including in particular those premised upon lack of subject matter jurisdiction, are entirely insulated from review. More specifically, § 1447(d) provides:

> An order remanding a case to the State court from which it was removed <u>is not reviewable on appeal or otherwise</u>, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise.

28 U.S.C. § 1447(d) (emphasis added); *see also Kirchner v. Putnam Funds Trust*, 547 U.S. 633, 642 (2006) (recognizing that "'[w]here the [remand] order is based on one of the grounds enumerated in 28 U.S.C. § 1447(c), review is unavailable no matter how plain the legal error in ordering the remand'") (citing *Briscoe v. Bell*, 432 U.S. 404, 413 n.13 (1977)); Milton I. Shadur, *Traps for the Unwary in Removal and Remand*, 33 no. 3 Litigation 43 (2007); *Powerex Corp. v. Reliant Energy Servs., Inc.*, 127 S. Ct. 2411, 2418 (2007) (holding that when "the District Court relied upon a

ground that is colorably characterized as subject-matter jurisdiction, appellate review is barred by § 1447(d)").

### B.     Defendants' Burden on Removal

The burden of establishing subject matter jurisdiction for the purposes of removal to this court is on the removing defendant(s). *See Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) ("Because this case was originally filed in state court and removed to federal court by Best Buy, Best Buy bears the burden of proving that federal jurisdiction exists."). "The court should determine its jurisdiction over the case 'based upon the plaintiff's pleadings at the time of removal.'" *Fowler v. Provident Life & Accident Ins. Co.*, 256 F. Supp. 2d 1243, 1246 (N.D. Ala. 2003).

"[B]ecause the jurisdiction of federal courts is limited, the Eleventh Circuit Court of Appeals favors remand of cases that have been removed where federal jurisdiction is not absolutely clear." *Lowe's OK'd Used Cars, Inc. v. Acceptance Ins. Co.*, 995 F. Supp. 1388, 1389 (M.D. Ala.1998) (citing *Burns v. Windsor*, 31 F.3d 1092, 1095 (11th Cir. 1994)). "In fact, removal statutes are to be strictly construed, with all doubts resolved in favor of remand." *Lowe's*, 995 F. Supp. at 1389 (citing *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir.1996)).

### III.  ANALYSIS

####   A.   Strike Motion

In her Strike Motion, Ms. Martin seeks to strike the declaration of Marilyn Balsam ("Ms. Balsam"), who has estimated the cost of the surgery denied to Ms. Martin to be in excess of $100,000. (Doc. 1 at Ex. D at 2 ¶ 4). More specifically, Ms. Martin contends that this approximate value is not pertinent to the court's analysis of the amount in controversy requirement because this is not an item of damages that she seeks to recover from Defendants. (Doc. 6 ¶ 3). In her reply, Ms. Martin again insists that "such damages are not pleaded in the Complaint at all." (Doc. 11 at 2 (emphasis added)).

The court has studied Ms. Martin's complaint and finds that, even though she does not expressly seek the foregone surgery and related treatment as damages recoverable against Defendants, she nevertheless has placed the value of those items squarely at issue with respect to the worth of her lawsuit:

> The refusal of the defendants to authorize payment for the treatment in question has caused physical injury, damage, pain, and emotional distress to the plaintiff, well beyond what the damage would have been had the treatment been authorized as prescribed.

(Doc. 1 at Ex. A at Compl. ¶ 15 (emphasis added)). Thus, Ms. Martin's own allegations make the value of the medical treatment that she has not received directly

relevant to the court's amount in controversy analysis. Accordingly, the Strike Motion is **DENIED**.

### B.   Remand Motion

As stated above, Defendants premise their removal exclusively upon this court's diversity jurisdiction. "Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds the statutorily prescribed amount, in this case $75,000." *Williams*, 269 F.3d at 1319 (citing 28 U.S.C. § 1332(a)). Therefore, removal jurisdiction based upon diversity mandates: (1) a complete diversity of citizenship between the plaintiff(s) and the defendant(s); and (2) satisfaction of the amount in controversy requirement.

### 1.   Citizenship Requirement

Diversity jurisdiction "requires complete diversity—every plaintiff must be diverse from every defendant." *Palmer v. Hosp. Auth.*, 22 F.3d 1559, 1564 (11th Cir. 1994). "Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person." *Taylor*, 30 F.3d at 1367.

In their notice of removal, Defendants have effectively met the diversity of citizenship requirement based upon the residence of Ms. Martin in Alabama (*see* Doc. 1 ¶ 3; *see also id.* Ex. A at Compl. ¶ 1 (stating Ms. Martin "is an adult resident of the State of Alabama")); the states of citizenship for Coventry in Delaware and Illinois.

(Doc. 1 ¶ 3); and the states of citizenship for CNA in Nevada and Illinois. (*Id.*). Additionally, Ms. Martin does not dispute that complete diversity exists.

### 2.     Amount in Controversy Requirement

Ms. Martin does contest the amount in controversy prong. Regarding this quantitative requirement, "when Congress created lower federal courts, it limited their diversity jurisdiction to cases in which there was a minimum monetary amount in controversy between the parties." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) (citing *Snyder v. Harris*, 394 U.S. 332, 334 (1969)). Today, the threshold amount in controversy for diversity jurisdiction, excluding interests and costs, is that which exceeds $75,000. 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs . . .[.]").

"[W]here a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the . . . jurisdictional requirement." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356-57 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (2000); *see also McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936); *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1211 (11th Cir. 2007).

In deciding whether Defendants have met their burden of demonstrating to the court that the amount in controversy more likely than not exceeds $75,000, exclusive of interest and costs, the court is guided by the Eleventh Circuit's decision in *Roe v. Michelin North America, Inc.*, 613 F.3d 1058 (11th Cir. 2010). *Roe* is informative because the decision post-dates *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 747 (11th Cir. 2010),[2] and, akin to the removal here, involves unspecified damages in a non-Class Action Fairness Act ("CAFA") case and is "governed by the first paragraph of § 1446(b)." *Roe*, 613 F.3d at 1061 n.3.

As the Eleventh Circuit explained in *Roe*:

> If a defendant alleges that removability is apparent from the face of the complaint, the district court must evaluate whether the complaint itself satisfies the defendant's jurisdictional burden. In making this determination, the district court is not bound by the plaintiff's representations regarding its claim, nor must it assume that the plaintiff is in the best position to evaluate the amount of damages sought. *Id.* at 771. Indeed, in some cases, the defendant or the court itself may be better-situated to accurately assess the amount in controversy. *See id.* (explaining that "sometimes the defendant's evidence on the value of the claims will be even better than the plaintiff's evidence," and that a court may use its judgment to determine "which party has better access to the relevant information.").

---

[2] *Pretka* clarified that the scope of the Eleventh Circuit's decision as binding precedent in *Lowery* is limited to second paragraph removals under § 1446(b). *See Pretka*, 608 F.3d at 747 ("As we will explain, *Lowery* was a case that involved the removal procedures in the second paragraph of 28 U.S.C. § 1446(b), and the decision must be read in that context.").

> Eleventh Circuit precedent permits district courts to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings to determine whether it is facially apparent that a case is removable. *See id.* at 754. Put simply, a district court need not "suspend reality or shelve common sense in determining whether the face of a complaint ... establishes the jurisdictional amount." *See id.* at 770 (quoting *Roe v. Michelin N. Am., Inc.*, 637 F. Supp. 2d 995, 999 (M.D. Ala. 2009)); *see also Williams*, 269 F.3d at 1319 (11th Cir. 2001) (allowing district courts to consider whether it is "facially apparent" from a complaint that the amount in controversy is met). Instead, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements. This approach is consistent with those of other circuits.

*Roe*, 613 F.3d at 1061-62 (footnote omitted).

Defendants contend that two grounds support satisfaction of the jurisdictional minimum: (1) evidence of the value of Ms. Martin's lawsuit as supported by the declaration of Ms. Balsam; and (2) facial apparency of the sum on the basis of the allegations of Ms. Martin's complaint. (*See generally* Doc. 9). Applying judicial experience and common sense, considering Ms. Martin's allegations about the worth of her case as being "well beyond what the damage would have been had the treatment been authorized as prescribed" (Doc. 1 at Ex. A at Compl. ¶ 15), and factoring in Ms. Balsam's estimated valuation of that treatment in the minimum amount of $113,375 (Doc. 1 at Ex. D at 2 ¶ 4), the court finds that Defendants have met the preponderance of evidence standard.

This conclusion is bolstered by the fact that nowhere in her filings has Ms. Martin suggested that the amount in controversy is $75,000 or less. *Cf. Roe*, 613 F.3d at 1065 ("Even Roe does not argue that Judge Thompson's appraisal of the worth of the claims was inaccurate; rather, Roe contends only that the district judge lacked the power to engage in that analysis in the first place."). Instead, the entire thrust of her opposition is that the cost of her medical treatment should not be included in the analysis. However, Ms. Martin's complaint makes it appropriate for this court to consider such evidence.

Alternatively, even if Ms. Martin's complaint had been absolutely silent about her omitted medical treatment and the court entirely disregarded Ms. Balsam's declaration, it would still conclude that Defendants have satisfied the preponderance of evidence standard under the facially apparent framework embraced in *Roe*. More specifically, "a reasonable reading of" Ms. Martin's claims for tort of outrage and punitive damages under Alabama law (and the underlying factual assertions supporting them) persuades the court that the amount in controversy requirement is satisfied. *Cf. Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("[T]he amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated." (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347, 97 S. Ct. 2434,

11

2443, 53 L. Ed. 2d 383 (1977))).

For example, in her complaint Ms. Martin maintains that Defendants' actions have caused her to suffer <u>extensive</u> physical pain to the structure of her body, <u>great and severe</u> emotional distress, further physical disability, and <u>permanent</u> injury. (Doc. 1 at Ex. A at Compl. 33). Further, to support her claim of outrage, Ms. Martin alleges that Defendants' conduct in denying payment for her surgery "is atrocious and utterly intolerable in a civilized society, [and] outrageous beyond all means of decency." (*Id.* ¶ 36).

Finally, in seeking punitive damages, Ms. Martin necessarily contends that clear and convincing proof will confirm:

> [T]hat the defendant[s] consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff.

Ala. Code § 6-11-20(a). Thus, against this backdrop and utilizing judicial common sense, it is facially apparent to the court that the value of Ms. Martin's case meets the jurisdictional minimum to remain in this federal forum even without considering the worth of the withheld medical treatment.

## IV. CONCLUSION

As determined above, Ms. Martin's Strike Motion and Remand Motion are both **DENIED**. Alternatively, Ms. Martin's Strike Motion is **TERMED** as **MOOT**

because her Remand Motion is still **DENIED** even in the absence of considering Ms. Balsam's contested declaration.

  **DONE** and **ORDERED** this the 14th day of May, 2012.

                _____
                **VIRGINIA EMERSON HOPKINS**
                United States District Judge